# IOWA ELECTRIC LIGHT & POWER COMPANY AND ANOTHER v. CITY OF FAIRMONT.[1]

November 19, 1954.

No. 36,282.

---

[1]Reported in 67 N. W. (2d) 41.

*Seifert, Johnson & Hand,* for appellants.

*Charles R. Zierke* and *Richard E. Kyle,* for respondent.

Frank T. Gallagher, Justice.

Appeal from an order of the district court denying plaintiffs' alternative motion for amended findings of fact and conclusions of law or for a new trial.

The facts are undisputed. Defendant, city of Fairmont, referred to hereinafter as the city, is a city of the fourth class operating under a home rule charter adopted in 1927. Prior to that time it operated under a home rule charter adopted in 1901. Plaintiff Iowa Electric Light and Power Company, referred to hereinafter as the gas company, is an Iowa corporation licensed to do business in Minnesota, and it was successor in interest under a 25-year franchise granted in 1925 to one Fred W. Freese to erect, maintain, and operate a gas distribution system in Fairmont. The franchise expired in 1950, and since that time the gas company has been operating by sufferance in the city. Plaintiff The First National Bank of Chicago is the trustee in the mortgage indenture securing the outstanding bonds in all the gas company's properties in several states, including that in Fairmont. The property affected by these proceedings is of the kind and character usually found in gas distribution systems, including rights, contracts, pipes, pipe lines, meters, easements, regulators, regulator stations, and a lot and building. Ninety percent of the affected property is personal property.

Subsequent to the passage of a resolution by the city council in November 1952, the city served notice on the gas company that it would present to the district court its petition for the condemnation of the gas company's utility system. Before that petition was presented to the court asking for the appointment of commissioners to determine the damages, this action was brought by the gas company praying for a temporary injunction. In its pleadings the gas company demanded judgment that a temporary injunction issue, and that the same be made permanent, enjoining and restraining the

city, its agents, attorneys, and officers from taking, appropriating, and condemning the gas company's real estate and personal property, from further proceeding in its condemnation proceedings, and from taking any further steps therein.

The action was heard before the court without a jury. The parties to the action, through their respective attorneys, entered into a stipulation of facts and a statement of the issues involved, which was received in evidence and filed herein.

The court found that M. S. A. c. 454 granted to the city the right to condemn the gas company's plant and gas system and set up the procedure to be used in such condemnation proceedings. While the court also found that the city charter does not set up any procedure for the condemnation of a public utility or any procedure for the condemnation of real estate or personal property, we are not concerned here with that part of the findings since no appeal is taken therefrom.

The court concluded that the procedure under c. 454 is adequate and constitutional and that the city must proceed thereunder. It also concluded that the gas company is not entitled to a permanent injunction as prayed for in the complaint. The court vacated the temporary injunction and ordered judgment accordingly. Thereafter, the gas company filed a supersedeas bond, which has kept the temporary injunction in effect pending this appeal.

The legal questions raised upon appeal are:

(1) Are M. S. A. c. 117 and related sections applicable and adequate in the condemnation of the gas properties involved herein, which properties consist of about 90 percent personal property?

(2) Is chapter 117 constitutional as it affects the rights of the gas company?

■ Section 117.01 provides in part:

"When the taking of private property for any public use shall be authorized by law, it may be acquired under the right of eminent domain in the manner prescribed by this chapter; * * *."

Section 454.01 provides:

"Any city of the first class in this state, excepting cities operating under home rule charters framed pursuant to the Constitution of the State of Minnesota, Article 4, Section 36, and all cities of the fourth class, whether operating under such a home rule charter or not, are hereby authorized to acquire plants for furnishing gas, electricity, water, or either, any, or all thereof, for municipal purposes, as well as for the use of the inhabitants of the city, and for that purpose may exercise the power of eminent domain in pursuance of chapter 117, and thereby may take any and all property necessary or convenient for acquiring and establishing these plants and for adding thereto, from time to time, including lands, manufacturing plants, * * * pipe lines, * * * storage plants, * * * and any and all property necessary or convenient, wherever situate, within or without the corporate limits, or of whatever character, and whether devoted to public use or not."

It will be noted that under § 454.01 all cities of the fourth class, such as Fairmont, had been authorized to exercise the power of eminent domain in pursuance of c. 117 and to take any and all property necessary or convenient for acquiring and establishing a gas utility system. The gas company contends that c. 117 is inadequate and inapplicable to the condemnation of personal property; that it is strictly a land statute; that it is unconstitutional and ineffective; and that it does not protect the company in the taking of its personal property for public use.

Chapter 117 sets forth the procedure under which the right of eminent domain may be exercised "When the taking of *private property* for any public use shall be authorized by law." (Italics supplied.) § 117.01. Section 117.02, subd. 2, defines "taking" in relation to private property. Section 117.03 refers to "such property." In the above three sections no distinction is made between real and personal property. However, §§ 117.04, 117.05, 117.07, 117.08, 117.09, 117.13, and 117.15 to 117.20 all refer to land or real estate. Construing those sections most favorably to the gas company's conten-

tion, the most that could be said is that a condemnation proceeding under c. 117 must be directed toward real estate. Section 117.05 supports the gas company's position in this respect. It reads:

"In all cases a petition, describing *the desired land,* stating by whom and for what purposes it is proposed to be taken, and giving the names of all persons appearing of record or known to the petitioner to be the owners thereof shall be presented to the district court of the county in which the *land* is situated praying for the appointment of commissioners * * *." (Italics supplied.)

That section also provides for notice to the *owners of the land* and upon all *occupants of such land.* But even this strict construction of c. 117 does not exclude condemnation thereunder of mixed real and personal property operated as a unit, such as the gas company's utility system, when the above sections are read in connection with § 117.01, which authorizes the taking of "private property for any public use." As stated by Mr. Justice Mitchell in Stevens v. City of Minneapolis, 29 Minn. 219, 220, 12 N. W. 533:

"* * * The great fundamental rule in construing statutes is to ascertain the intent of the legislature, and to attain this object every part of a statute must be considered in connection with the whole, so as, if possible, to give effect to every part."

The gas company strongly urges that Lone Star Gas Co. v. City of Fort Worth, 128 Tex. 392, 98 S. W. (2d) 799, 109 A. L. R. 374, is definitely in point and that it requires a conclusion that c. 117 is inapplicable to the condemnation of utility properties. With this we cannot agree because of the difference between the statutes under consideration in that case and those in the one at bar. The statutes involved in the Lone Star case were held inapplicable to the condemnation of a gas utility system. A reading of the statutes involved, now Vernon's Tex. Civ. Stat. articles 3264 to 3269, indicates the correctness of the Lone Star holding and also the material difference between our statute and the Texas statute. Article 3264 reads:

"The exercise of the right of eminent domain shall in all cases be governed by the following rules:

"Sec. 1.    When *real estate* is desired for public use * * * by a city or town, * * *." (Italics supplied.)

The Texas supreme court further found in that case that the legislature had never intended the use of articles 3264 to 3269 for condemnation of public utilities. However, the legislature in our state expressly provided that c. 117 may be used in such proceedings. See, § 454.01. In our opinion, the distinction between the statutes in Texas and Minnesota is obvious.

Not only has our legislature provided that c. 117 may be used in connection with the condemnation of gas properties (§ 454.01), but it has also granted the power of eminent domain to various classes of cities, villages, and political subdivisions in this state for other types of public utilities; for example, in § 456.01 (waterworks, light and power plants) ; § 457.02 (same) ; and § 457.085, subd. 1 (waterworks and light plants). In all of those sections it is expressly provided that c. 117 may be used for the purposes above specified. Thus, it is apparent that our legislature has never considered c. 117 as limited in its application to the condemnation of real estate only.

Our view is supported by Southern Indiana Gas. & Elec. Co. v. City of Boonville, 215 Ind. 552, 20 N. E. (2d) 648, a case which held a statute similar to c. 117 constitutional as applied to the condemnation of an electric utility. In that case the court declined to follow the Lone Star case because of the differences between the Texas and Indiana statutes.

The gas company also objects to the provisions of § 117.07 as insufficient and inadequate for fairly appraising just compensation to be awarded for its gas utility system. Section 117.07 provides that the court shall appoint three disinterested residents of the county to ascertain and report the amount of damages that will be sustained by the several owners on account of the taking and also provides that the court shall fix the time and place of the first meeting of the commissioners and prescribe their compensation. The gas company also argues that, while it is common knowledge that in

every county there are men qualified to appraise real estate, the same situation does not exist as to the appraisal of gas properties because of the intangible, tangible, and personal property involved in such a gas distribution system. It questions whether three disinterested persons may be found in rural counties such as Martin who are qualified to act in condemnation proceedings involving a gas distribution system or who would be qualified to understand the expert testimony of the engineers as to values, et cetera. It is the further claim of the gas company that under § 117.07 the commissioners are at liberty to proceed to place any valuation they might choose upon the property and follow any method of procedure in so determining such value and that the court cannot instruct these commissioners as to how to arrive at just compensation.

As to the provision for three disinterested residents of the county to serve as commissioners, the Indiana supreme court said in Southern Indiana Gas & Elec. Co. v. City of Boonville, 215 Ind. 552, 558, 20 N. E. (2d) 648, 651:

"* * * The provisions that the three appraisers shall be disinterested freeholders are minimum qualifications, and we would not be warranted in assuming, in the absence of some showing of fact, that the court had appointed, or might appoint, persons to discharge that duty who were otherwise unqualified or incompetent. It would be a rash assumption to say, as has been suggested, that there are not in any county in this state three disinterested freeholders possessing the requisite knowledge and judgment to qualify them to fairly appraise utility properties."

We approve of this view. Further, most condemnation statutes of this type do not set forth any detailed methods of valuation. 2 Orgel, Valuation Under Eminent Domain (2 ed.) § 200, p. 60. The court undoubtedly will advise the commissioners what elements of damage they should consider in making their award, and this practice has been approved by this court in Board of Park Commrs. v. Bremner, 190 Minn. 534, 536, 252 N. W. 451, 452, 253 N. W. 761, where we said:

"* * * The law makes no provision for instructions by the trial court to the commissioners appointed by it for the purpose of re-

assessing benefits or making awards in cases of this character. In this respect it is like the general law in regard to condemnation proceedings. Usually, in matters of importance, by agreement of counsel, the district courts have adopted the highly commendable practice of advising the commissioners as to what elements of damage or benefit they should take into consideration in making their award or assessment. This court approves of that practice, * * *.

\* \* \* \* \*

"\* \* \* There being no provision of law authorizing or requiring the court to instruct such commissioners, we regard the situation as within the court's discretion. It may advise the commissioners, or it may not, as the circumstances appear to require."

Answering the gas company's first legal question raised, it is our opinion that c. 117 and related sections are applicable and adequate in the condemnation of the gas properties involved even though such properties in this case include about 90 percent of personal property.

The gas company contends that the procedure set out in c. 117 is unconstitutional as to it because (1) it fails to provide any method of compensation or any compensation for betterments, improvements, and extensions which the gas company may be obligated to make during the pendency of the condemnation proceedings; (2) it allows the city to pay the award at any time after the commissioners' report is filed and to take possession pending an appeal; and (3) it does not provide for a final judgment which pledges the full faith and credit of the city for the payment of the award.

It is the rule in Minnesota that compensation shall be determined and damages assessed as of the date the commissioners file their award and with respect to the value and condition of the property at that time. Winona & St. Peter R. Co. v. Denman, 10 Minn. 208 (267); Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713; State, by Peterson, v. Bentley, 231 Minn. 531, 45 N. W. (2d) 185; 6 Dunnell, Dig. (3 ed.) § 3060. The gas company's objection is that there is no provision in c. 117 allowing compensation for such improvements, extensions of service, and repairs as it

may be obligated to make under § 300.04 during the pendency of the proceedings; thus, that its property may be taken without just compensation therefor.

Ford Motor Co. v. City of Minneapolis, *supra*, was decided under G. S. 1913, §§ 1566 to 1578, which authorized certain cities to condemn lands for streets, parks, and parkways under the procedure therein prescribed. In that case the court held that the property owner was entitled to interest on the award from the date of filing, with setoffs on the interest allowed for his beneficial use of the property from the time of filing the original award until the property was taken. The court's reasoning was (143 Minn. 395, 173 N. W. 715):

"* * * The just compensation required by the Constitution includes not only the amount of the final award, but also the interest thereon from the date of the original award until the money becomes available to the landowner. * * * Such interest could not well be included in the final award as the full amount of interest could not be determined at that time. * * * The statute contains no specific provision that the court shall determine either the amount of the interest, or the amount deductible therefrom for the use of the premises, if used by the landowner after the filing of the original award; *but, in order to make the proceedings effectual and accomplish the purpose intended, the court must determine the various incidental questions that arise, and as said in effect in the Warren case,[2] the statute undoubtedly contemplates that the court will do so.*" (Italics supplied.)

In Oronoco School Dist. v. Town of Oronoco, 170 Minn. 49, 52, 212 N. W. 8, 9, the court discussed the lack of provision in the statute (c. 117) for determining, at the time of hearing the petition, the interests of the various parties in the land to be taken and made the following conclusion:

"Where jurisdiction over certain subject matter is conferred upon a court and no procedure is provided by the statute, the court will

---

[2]Warren v. First Div. St. Paul & Pac. R. Co. 21 Minn. 424.

proceed under its general powers and adopt such procedure as is necessary to enable it to exercise and make effective the jurisdiction thus granted."

We conclude that the district court, in the absence of statutory regulations, has inherent power to consider the compensation to be awarded the gas company for improvements, betterments, and extensions made during the pendency of the condemnation action and may adopt any proper procedure for determining and awarding such compensation. This is only reasonable. Surely it was never contemplated that a statute which permitted the taking of private property for public use by eminent domain would preclude or defeat the payment of just compensation for extensions, betterments, or improvements made after the date of filing of the award but before the property was taken over by the municipality. That would be particularly true in connection with the taking of a public utility such as the one involved here, inasmuch as § 300.04 provides that the state shall at all times have the right to supervise and regulate the business methods and management of such a corporation. It further provides that every such corporation obtaining a franchise from a city or village shall be subject to such conditions and restrictions as may be imposed upon it by the municipality. The gas company should be properly compensated for any such betterments, extensions, or improvements it was required to make after the award was made but before relinquishing possession of the property, subject to proper setoffs arising out of its continued use of the property during that time.

We have carefully considered the gas company's remaining contentions and believe that, under the statutes, its rights are protected. Section 454.02 provides that judgment may be entered by the condemnor at any time within four months of the filing of the award of commissioners *or, in case of appeal, within four months after verdict or such additional time as the court may order.* It further provides that the faith and credit of the city shall be pledged to the payment of the judgment and interest. It is our opinion that

186

this is adequate protection for the constitutional rights of the gas company.

The gas company urges a strict construction of the constitution in favor of the owner of the property sought to be taken. We have no quarrel with that principle of the law. However, in this case we have already determined that c. 117 is not strictly limited to the taking of land but also involves the taking of private property for public use. In Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394, this court took the position that the majority of cases clearly establish that the principle of strict construction has no application insofar as the state or public departments thereof are concerned. See, 29 C. J. S., Eminent Domain, § 22.

Affirmed.