## BLUE DIAMOND POULTRY FARMS, INC. v. COMMISSIONER OF TAXATION.

91 N. W. (2d) 595.

July 25, 1958—No. 37,393.

*Rosenbloom & Rosenbloom,* for relator.

*Miles Lord,* Attorney General, and *Jerome J. Sicora,* Special Assistant Attorney General, for respondent.

*Walter J. Wheeler, Harold M. Fredrikson, Thomas E. Holloran,* and *Wheeler, Fredrikson, Hoke & Larson,* for Minnesota State Association of Life Underwriters, Inc., amicus curiae.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the Board of Tax Appeals sustaining the determination of the commissioner of taxation imposing an inheritance tax upon the proceeds of certain insurance policies covering the life of Engfred J. Lindblom, the decedent, owned at his death by and payable to relator.

Three policies are involved. The first was taken out by decedent February 14, 1941, in the amount of $7,000 and named relator as the beneficiary. Later in that year the insured released any rights to change the beneficiary or to receive the cash surrender value. The second policy, having a face value of $10,000, was purchased May 15, 1942, naming decedent's wife as beneficiary if she survived him and if not, his partner. On August 1, 1947, decedent irrevocably designated relator as the beneficiary of this policy and also relinquished any further rights thereunder. On June 28, 1947, the third policy was purchased. The face value was $3,000 and all rights were reserved to relator, including the right to change the beneficiary. Relator paid all the premiums on the three policies. Decedent died April 5, 1951, and an inheritance tax of $1,145 was assessed against relator by virtue of the receipt of the insurance proceeds in the amount of $20,000. The validity of the assessment is the issue of this appeal.

The case requires a construction of L. 1949, c. 735, § 1 (M. S. A. 291.01, subd. 5). However, before passing to the consideration of this section, it will be helpful to review its prior statutory history. In 1937, for the first time, a tax was specifically imposed upon life insurance proceeds by Ex. Sess. L. 1937, c. 50, § 3. So far as it is here material, that statute provides:

"The proceeds of all life or accident insurance policies taken out by decedent and payable on account of his death in excess of $32,500, receivable by named beneficiaries, shall be subject to the tax herein imposed, as follows:

"(a) The proceeds of all such policies hereafter issued payable to named beneficiaries.

"(b) The proceeds of all such policies now in force payable to named beneficiaries in which the insured has the right to change the beneficiary or under which he has cash surrender right."

We have had occasion to construe this statute only once—in DeCoster v. Commr. of Taxation, 216 Minn. 1, 11 N. W. (2d) 489. In that case decedent had insured his life for $50,000 in 1936 before the statute was passed, naming his wife as beneficiary. At the time he retained both the right to change the beneficiary and the right to turn in the policy and receive its cash surrender value. After the act was passed the insured transferred those rights to his wife but continued to pay the premiums on the policy. He considered the transfer a gift and paid a tax thereon. Upon his death in 1939 an inheritance tax was assessed against that portion of the proceeds which exceeded the $32,500 exemption provided by the statute. The wife objected to the tax on the ground that by transferring to her all of the rights under the policy the insured had divested himself of the incidents of ownership therein so that there was nothing left to tax by virtue of her husband's death. The question thus presented was whether subsection (b) became applicable on the date of the enactment or whether it was to apply up to the date of the insured's death. We accepted the former view and upheld the assessment, taking pains to point out that (216 Minn. 5, 11 N. W. [2d] 490):

"* * * Until rates were fixed upon proceeds of policies of insurance the officers charged with imposing and collecting the tax could not act. Obviously, * * * the legislature attempted to reach policies such as relator's at the time the chapter took effect."

In 1949 the legislature made a significant departure from the method of taxing life insurance proceeds provided for under the 1937 statute. A graduated series of exemptions, dependent upon the relation of the beneficiary to the insured, was substituted for the flat $32,500 amount. To accomplish this objective two things were done: (1) By L. 1949, c. 735, § 1, the words "in excess of $32,500," as they appeared in the statute which has been previously quoted, were deleted along with

several provisions not here material relating to the allocation of that amount among the various beneficiaries, and (2) by § 2 of the statute a new table of exemptions was enacted which is now codified as M. S. A. 291.05(4).

The sole question which requires a decision on appeal, therefore, may be stated in this way: Did all of § 291.01, subd. 5, become effective April 25, 1949, when the amendment thereto was passed, or is only the first paragraph effective from that date while the subsections are effective from the date of the 1937 act? For the reasons hereafter stated, we think the former is the proper construction of the statute.

Both parties rely upon § 645.31, relating to the construction of amendatory laws. That section provides:

"When a section or part of a law is amended, the amendment shall be construed as merging into the original law, becoming a part thereof, and replacing the part amended, and the remainder of the original enactment and the amendment shall be read together and viewed as one act passed at one time; but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their first enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective."

Relator's position is that § 291.01, subd. 5, is an organic whole; that the 1949 amendment applies to the entire subdivision; and that it is effective from the date of the amendment. Respondent claims that the first paragraph only is effective from 1949 because only it was changed; that the subsections are effective from 1937; and that the tax was therefore properly imposed.

A simple reading of the statute discloses that subsections (a) and (b) are not severable from the first paragraph of subd. 5. Standing apart and without reference to it, they have no intelligible meaning whatsoever. Both subsections begin with the phrase, "The proceeds of all such policies." Unless there is a reference back to the preceding paragraph it is impossible to determine what policies are intended. But when such a reference is made it becomes clear that the phrase referred to the "proceeds of all life or accident insurance policies taken

out by decedent and payable on account of his death in excess of $32,500." Even though the words themselves were not incorporated into subsections (a) and (b), their meaning was, and the subsequent amendment which deleted the words in the first paragraph must necessarily be construed to delete their implied inclusion in the subsections. If this were not the case, then there would be no monetary limit placed upon the word "proceeds" in the subsections, thereby producing a conflict between their meaning and the meaning of the preceding paragraph. We do not construe statutes in such a manner.[1]

There is another reason which prompts us to reach the conclusion that all of subd. 5 is to be considered as a whole. The last two words of the first paragraph are "as follows." Reading that paragraph without reading subsections (a) and (b) would alter the meaning of the entire subdivision. When the legislature uses the words "as follows," it must intend that the provisions which come thereafter are directly connected with the preceding material.[2] Therefore, all of subd. 5 should be read together and any amendment to a portion of it must necessarily affect all of it.

Apart from the result which we believe a reading of the statute compels, we are of the opinion that a construction of the entire subdivision as applicable from 1949 is consonant with the intent of the legislature. Although it decided to proceed by way of amendment in order to change the method of taxing insurance proceeds, it is clear that an entirely new concept of taxing such proceeds was thereby to be inaugurated into the inheritance tax law. Subd. 5 must, therefore, be read in conjunction with § 291.05(4) and the whole law viewed as a single piece of legislation.[3] When this is done we perform our duty under § 645.16 by construing the statute in the manner in which the legislature intended it to operate—as a new system of taxing insurance proceeds after April 25, 1949. Therefore we conclude that this is the proper construction to be given to subd. 5.

[1]See, Iowa Elec. Light & Power Co. v. City of Fairmont, 243 Minn. 176, 180, 67 N. W. (2d) 41, 45.

[2]Cf. Phillips v. Wilmington & Weldon R. Co. 130 N. C. 582, 41 S. E. 805.

[3]See, Rogers v. Minneapolis St. Ry. Co. 218 Minn. 454, 16 N. W. (2d) 516.

All of the policies involved here were issued before April 25, 1949, and § 291.01, subd. 5(b), is, therefore, applicable. Since on that date the insured no longer had the right to change the beneficiary or to receive the cash surrender value, it seems clear that the proceeds of the policies were not subject to taxation. Had he not relinquished these rights before that time but had done so thereafter, then we would have before us exactly the same situation which the DeCoster case presented and we would be required to uphold the tax—assuming, of course, that we would adhere to that decision.

In the disposition of this case it is unnecessary to pass on the questions raised by the brief of the Minnesota State Association of Life Underwriters as amicus curiae. It will be time enough to do that, and to consider the soundness of the DeCoster decision, when the facts of another case raise the issues and are properly treated and briefed. The decision of the Board of Tax Appeals is reversed with instructions to enter judgment for relator.

Reversed.