**Kirk DAHL, et al., on behalf of themselves and all others similarly situated, Appellants,**

v.

**CHARLES SCHWAB & CO., INC., Respondent.**

**No. C1–94–1040.**

Court of Appeals of Minnesota.

Dec. 13, 1994.

Review Granted Feb. 14, 1995.

Karl L. Cambronne, Jeffrey D. Bores, Chestnut & Brooks, P.A., Minneapolis, Mark Reinhardt, Gavin S. Wilkinson, Reinhardt & Anderson, St. Paul, Charles H. Johnson, Garrett D. Blanchfield, Jr., Charles H. Johnson & Associates, New Brighton, for appellants.

Steve Gaskins, Jeannine L. Lee, Cosgrove, Flynn & Gaskins, Minneapolis, Norman J. Barry, Jr., Barrie L. Brejcha, Baker & McKenzie, Chicago, IL, for respondent.

Considered and decided by HARTEN, P.J., and DAVIES and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellants challenge the district court's grant of summary judgment, arguing (1) that their claims are not preempted by federal securities law, and (2) that the Securities and Exchange Commission does not have primary jurisdiction. We reverse and remand.

## FACTS

Respondent Charles Schwab & Co., Inc. (Schwab) is a discount securities brokerage firm. If a stock is traded on a national or regional stock exchange, a broker such as Schwab has several options on how to execute a client's securities transaction. One option is for Schwab to place an order through a wholesale dealer who makes a market in the traded security. Under this practice, Schwab executes a buy order at the dealer's current ask price per share or executes a sell order at the dealer's bid price. The spread between the ask price and the bid price is the wholesale dealer's per share profit.

Dealers are often willing to return some of their spread, usually a few cents per share, in exchange for a brokerage firm's business. These dealer payments to brokerage firms such as Schwab are known in the securities industry as "order flow payments." Schwab does not remit the order flow payment to its clients.

Order flow payments are common in the industry and Schwab claims they are an integral part of the competitive structure of the national securities markets. Schwab argues that order flow payments allow a broker to charge lower commissions to its clients,

thereby benefitting investors. Order flow payments have become a significant source of income for discount brokers, such as Schwab, whose declared commission may be only a few cents per share.

Schwab mails a confirmation slip after the client places an order. There is a limited disclosure on the reverse side of the confirmation slip to the effect that Schwab receives or may receive remuneration, other than a commission for the order. The disclosure does not set out the amount of remuneration.[1]

Appellants Kirk Dahl, Robert Olson and Charles Dahl, on behalf of themselves and all others similarly situated, each commenced separate but identical actions challenging Schwab's scheme for handling order flow payments, based largely on Schwab's alleged breaches of Minnesota statutory and common law. In their complaints, appellants alleged that Schwab breached its fiduciary duty of full disclosure; breached its fiduciary duty to avoid self-dealing; had a duty under agency principles and the doctrine of money had and received to remit profits it received on account of the agency relationship; violated the Minnesota Uniform Deceptive Trade Practices Act, Minn.Stat. §§ 325D.43–48 (1992); and violated the Minnesota Consumer Protection Act, Minn.Stat. §§ 325F.68–70 (1992). Appellants sought damages, an accounting of Schwab's profits, injunctive relief, and attorney fees, costs, and disbursements.

The district court granted Schwab summary judgment, concluding that appellants' claims are preempted by federal securities law and that the Securities and Exchange Commission has primary jurisdiction over the issues. This appeal followed.

## ISSUES

1. Did the district court err in determining that appellants' Minnesota common law

and statutory claims are preempted by federal securities law?

2. Did the district court err in determining that appellants' claims should be deferred to the Securities and Exchange Commission under the doctrine of primary jurisdiction?

## ANALYSIS

■ On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no genuine issues of material fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

■ This court need not defer to the district court's decision on a purely legal issue. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### I. *Federal Preemption*

The potential harms and benefits from the order flow payment scheme has caused much debate and controversy within the securities industry. Schwab claims that order flow payments have been studied by Congress, the SEC, and other regulatory organizations and allowed to flourish. Thus, Schwab asserts that appellants' attempt to have the practice declared illegal in Minnesota constitutes a clear threat to the uniform operation of the national securities markets and a usurpation of the SEC's plenary regulatory power over the securities markets.

Congress has passed no statute dealing directly with order flow payments. At the

---

1. Specifically, the back side of the confirmation slip provides:
   If this is an OTC transaction, Charles Schwab & Co., Inc. may receive remuneration from the broker through whom the transaction was executed. The amount of such remuneration may vary and will be disclosed to you upon request.

Or, the slip provides:
   For OTC or listed securities transactions, Charles Schwab & Co., Inc. does receive remuneration from the broker/dealer through whom the transaction was executed. The amount of such remuneration may vary and will be disclosed to you upon request.

time this case was argued, the SEC had not promulgated any final regulations regarding the receipt of order flow payments. The only federal regulation currently in effect concerning non-commission compensation is found in SEC Rule 10b–10(a)(7)(iii) codified at 17 C.F.R. § 240.10b–10(a)(7)(iii) (1994). It requires only that a broker send the client written notification disclosing

> whether any other remuneration has been or will be received and that the source and amount of such other remuneration will be furnished upon written request of such customer.[2]

Appellants argue that Minn.Stat. § 80A.06, subd. 5 (1992) applies to order flow payments and requires disclosure of the exact amount of remuneration. Section 80A.06, subdivision 5 provides that where a broker accepts remuneration in connection with the sale or purchase of the security, the broker must, prior to or contemporaneously with the confirmation of the transaction, provide

> written disclosure to the client or customer * * * of the acceptance or intended acceptance of the remuneration or other thing of value and the amount of it.

Neither the state law nor the SEC Rule deal specifically with order flow payments;

rather, both provisions are catch-all provisions regarding disclosure of non-commission revenue. No federal or state law or regulation specifically provides whether a broker such as Schwab should receive or disclose order flow payments.[3]

The parties dispute whether current federal law preempts appellants' claims under Minnesota law.

The United State Supreme Court has stated:

> Pre-emption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained."

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)).[4]

If Congress has not explicitly or implicitly displaced all state action in a specified field, the preemption doctrine still arises if compliance with both the federal and state law is an impossibility or when the state law is an

---

**2.** This provision applies to purchases in which the broker was not participating in a distribution, and sales in which the broker was not participating in a tender offer. 17 C.F.R. § 240.10b–10(a)(7)(iii).

**3.** On September 27, 1994, the Securities and Exchange Commission voted to amend Rule 10b–10 and adopt Rule 11Ac1–3 under the Securities Exchange Act of 1934 generally requiring enhanced disclosure of order flow payments. The new rule and amendments are designed to provide relevant information to customers regarding factors influencing the routing of their orders. The new rule and amendments will also serve to enhance investor protection and further competition for retail orders by enabling customers to evaluate more effectively the markets to which their orders are routed.

The SEC released its final rule on October 27, 1994 to be effective April 3, 1995. *See* SEC Release No. 34–34902 (to be codified at 17 C.F.R. § 240). Because these changes have not yet taken effect, they have no effect on whether Schwab violated Minnesota law by failing to more fully disclose its handling of order flow

payments. We do not reach the issue of whether Minnesota law will be preempted when Rule 11Ac1–3 and the amendment to Rule 10b–10 take effect.

**4.** The parties agree that federal law does not completely preempt state law in the securities field. Section 28 of the Securities Exchange Act of 1934, as set forth in 15 U.S.C. § 78bb(a) (Supp.1994), provides:

> The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity.

*See also Leroy v. Great W. United Corp.,* 443 U.S. 173, 182, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979) (noting that section 28 was "intended to protect rather than to limit, state authority"; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 137, 94 S.Ct. 383, 394, 38 L.Ed.2d 348 (1973) ("Congress intended to subject the exchanges to state regulation that is not inconsistent with the federal Act").

obstacle to the accomplishment of the purposes of the federal scheme. *Florida Lime & Avocado Growers*, 373 U.S. at 142–43, 83 S.Ct. at 1217; *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

### 1. Compliance With Both State and Federal Regulations

The critical issue concerning order flow payments is the amount of disclosure required. Both federal and Minnesota law address disclosure requirements for securities transactions, although no state or federal law or regulation specifically addresses order flow payments. If Minn.Stat. § 80A.06, subd. 5 applies to order flow payments, it would appear to be stricter than the disclosure requirement in SEC Rule 10b–10(a)(7)(iii).

■ A state regulation will survive a Supremacy Clause challenge where it is stricter than a federal regulation regarding the same conduct, so long as compliance with both is not impossible. *See, e.g., CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 84–87, 107 S.Ct. 1637, 1647–48, 95 L.Ed.2d 67 (1987) (state law which delayed consummation of tender offers until at least 50 days after commencement of the offer did not conflict with 20–day federal minimum period for holding open tender offers).

■ In the present case, compliance with both state law, if applicable, and the SEC rule is not an impossibility. Compliance with Minn.Stat. § 80A.06, subd. 5 necessarily satisfies SEC Rule 10b–10(a)(7)(iii). Thus, the laws are not conflicting. Moreover, the state legislature should be able to enact stricter laws protecting its citizens than federal laws, unless there is some overriding federal or national consideration.

In addition to their statutory claims, appellants allege common law causes of action based primarily on Minnesota agency law. Appellants assert that Schwab, as their fiduciary, owed them a duty of loyalty, a duty of full disclosure, and a duty of due care in executing their instructions. Under agency principles, appellants also assert that Schwab owed a duty to divulge the amount and source of remuneration it received in exchange for routing orders to certain wholesale dealers. Assuming appellants' common law claims are actionable, there are no federal laws that conflict with or would preclude the bringing of such claims.

Therefore, we conclude that compliance with both federal and state regulation is not an impossibility. But, this conclusion does not end our inquiry. State law may still be preempted if it stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

### 2. Purpose and Objectives of Congress

Schwab argues that there is an actual conflict between the state and federal schemes because to give effect to Minnesota statutory and common law would be an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. We disagree.

We reject Schwab's assertion that appellants are attempting to use Minnesota law to affect the operation of the national securities markets. A review of appellants' complaints reveals that appellants do not suggest that order flow payments themselves are illegal under Minnesota law or that they should be prohibited. Rather, the crux of appellants' complaints is that order flow payments were retained by Schwab without any disclosure to or remuneration of Schwab's clients.

Schwab asserts that appellants are in fact seeking an end to order flow payments because the suggested disclosure requirements would effectively end the practice. We disagree. There is no credible evidence to suggest that more disclosure would end order flow payments. Requiring added disclosure in no way affects how the securities markets operate. Added disclosure could, however, benefit the investor. Thus, application of Minnesota law would serve a basic purpose of the federal laws and regulations. *See Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 800

(2d Cir.) (Securities Exchange Act is "for the protection of investors"), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973); *El Khadem v. Equity Sec. Corp.,* 494 F.2d 1224, 1227 (9th Cir.) (purpose of Act was to ensure "full and fair disclosure to purchasers of securities"), *cert. denied,* 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 146 (1974).

We conclude therefore, that imposition of Minnesota law would not conflict with the congressionally-mandated goal of uniform and consistent regulation of the securities markets and would not frustrate the ongoing regulatory activities of the SEC.

Accordingly, we hold that there is no conflict between Minnesota common or statutory law and federal law concerning the regulation of order flow payments. Thus, an action challenging a securities brokerage firm's retention of order flow payments without adequate disclosure is not preempted by federal securities law or regulations. A state district court can therefore determine the merits of the dispute.

## II. *Primary Jurisdiction*

The doctrine of primary jurisdiction is a judicially created doctrine concerned with the orderly and sensible coordination of the work of agencies and courts. *City of Rochester v. People's Coop. Power Ass'n,* 483 N.W.2d 477, 480 (Minn.1992). Its application is used whenever enforcement of the claim requires the resolution of issues that, under a regulatory scheme, have been placed within the special competence of an administrative body. *Id.*

Use of the doctrine ensures that agencies are not passed over in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, so that uniformity and consistency result. *Id.* The doctrine is inapplicable if the issues raised are inherently judicial unless the legislature has explicitly granted exclusive jurisdiction to the administrative body. *Id.*

Whether brokers must disclose or remit order flow payments to their customers under Minnesota law, on these undisputed facts, is a question of law. Therefore, resolution of these issues does not require the special fact-finding abilities of the SEC. *Cf. Ricci v. Chicago Mercantile Exch.,* 409 U.S. 289, 305, 93 S.Ct. 573, 582, 34 L.Ed.2d 525 (1973) (case raised issues of fact and questions about the scope, meaning and significance of Exchange membership rules, matters that "should be dealt with in the first instance by those especially familiar with the customs and practices of the industry and of the unique marketplace" involved in the case).

This case is distinguishable from *Gordon v. New York Stock Exch. Inc.,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975). The SEC does not expressly regulate order flow payments as it does commissions. *See id.* at 685, 95 S.Ct. at 2612–13. While the SEC will impose regulation of order flow payments in the future, the fact remains that there are now no specific regulations. Thus, order flow payments are not a matter exclusively within the province of the SEC and state regulation would not interfere with any SEC regulatory activity. The SEC is not expected to control every relationship in the securities industry nor is it empowered to. Accordingly, the doctrine of primary jurisdiction does not bar appellants from asserting their actions in the state district court.

## DECISION

The district court erred in determining that appellants' Minnesota common law and statutory claims are preempted by federal securities law and regulations. Additionally, appellant's claims should not be deferred to the Securities and Exchange Commission under the primary jurisdiction doctrine.

**Reversed and remanded.**