**CITY OF MOORHEAD, Appellant,**

v.

**RED RIVER VALLEY COOPERATIVE POWER ASSOCIATION, Respondent.**

**No. A11–0705.**

Supreme Court of Minnesota.

May 1, 2013.

Kathleen M. Brennan, Corey J. Ayling, McGrann Shea Carnival Straughn & Lamb, Chtd., Minneapolis, MN; and, Benjamin E. Thomas, Wold Johnson, P.C., Fargo, ND, for appellant.

Harold LeVander, Jr., Sara Gullickson McGrane, Jessica M. Marsh, Felhaber, Larson, Fenlon, & Vogt, P.A., Saint Paul, MN, for respondent.

Susan L. Naughton, Saint Paul, MN, for amicus curiae League of Minnesota Cities.

Elizabeth A. Wefel, Flahtery & Hood, P.A., Saint Paul, MN, for amici curiae Minnesota Municipal Utilities Association, Missouri River Energy Services, Western Minnesota Municipal Power Agency, and Coalition of Greater Minnesota Cities.

Richard J. Johnson, Valerie M. Means, Jeff Y. Lin, Moss & Barnett, Minneapolis, MN; for amici curiae Otter Tail Power Company, Minnesota Power, Interstate Power and Light Company, Northern States Power Company, Great River Energy, and Minnesota Rural Electric Association.

## OPINION

ANDERSON, G. BARRY, Justice.

We are presented here with issues arising out of the expansion of the City of Moorhead and the decision of the City to provide municipal electrical service to recently annexed territory. The City annexed Americana Estates, a residential subdivision with 65 metered electric service accounts. The City then filed a condemnation petition to begin municipal electric service to residents of Americana Estates under Minn.Stat. § 216B.47 (2012). The Red River Valley Cooperative Power Association (RRVC), which previously served Americana Estates, did not dispute the authority of the City to condemn the territory. The district court appointed a three-member commission to determine the appropriate amount of damages. After a two-day hearing, the commission awarded RRVC $307,214.[1] Both parties appealed the commission's award of damages, setting the stage for a jury trial under Minnesota's condemnation procedures.

---

1. The commission broke down the award into the four statutory categories specified by Minn. Stat. § 216B.47:

| | |
|---|---|
| Original cost of facilities less depreciation: | $19,867 |
| Loss of revenue to the cooperative: | $261,891 |
| Expenses resulting from integration of facilities: | $ 25,456 |
| Other appropriate factors: | $0 |

The case featured two continuances to accommodate the City, and produced four scheduling orders. The third amended order scheduled trial for May 4, 2010, and set a deadline of December 22, 2009, for the exchange of expert reports. Though the trial date was postponed yet again—trial finally commenced October 11, 2010—the fourth (and final) scheduling order retained the previous deadline for exchanging expert reports.

The parties exchanged their initial expert reports on the day of the deadline, December 22, 2009. The City's report calculated damages using a traditional fair market value approach in which it calculated the total value of RRVC's business enterprise before and after the taking, with the difference constituting the compensation due. According to the City's report, the value of damages to RRVC was $164,456.

RRVC's report declined to use or consider a fair market value approach, instead limiting its analysis to the four statutory factors set forth in Minn.Stat. § 216B.47: (1) original cost of the facilities less depreciation; (2) loss of revenue to the utility; (3) expenses resulting from integration of facilities; and (4) other appropriate factors. Minn.Stat. § 216B.47. RRVC's expert had testified before the three-member commission that he analyzed the damages from the "seller's perspective," and that such an analysis could, but would not always, result in a higher valuation than a fair market value approach. He noted that one would generally look to the replacement cost of facilities in calculating fair market value, while the statute here specifies "original cost less depreciation," which is "fundamentally different." RRVC's report valued the damages at $385,188.

Both parties sought partial summary judgment, or in the alternative, moved in limine to exclude certain testimony from the opposing party's expert. The City moved for "an order determining that the proper damages standard in this proceeding is fair market value and excluding damages testimony not based on fair market value." RRVC's motion requested, in relevant part, "an order granting partial summary judgment in its favor that (1) the four factors for determining Red River's damages under Section 216B.47 do not include the fair market value of its utility business before and after the acquisition of Americana Estates"; or, in the alternative, "an order excluding the City's Expert Witness Report ... to the extent that it uses the fair market value of Red River's utility business before and after the acquisition of Americana Estates as the measure of damages."

The district court denied the City's motion and granted partial summary judgment to RRVC, holding that "the appropriate legal damages standard in this eminent domain proceeding is that of Minnesota Statute § 216B.47, and the jury will be instructed that the damages awarded should cumulatively include: (1) the original cost of the property less depreciation, (2) loss of revenue to the utility, (3) expenses resulting from integration of facilities, and (4) other appropriate factors." It further ordered that all evidence regarding fair market value, including testimony and portions of the report by the City's expert, would be excluded.

On September 8, 2010—just over one month before the new trial date, several months after the trial was scheduled to begin at the time the expert report deadline was set, and almost six months after the district court decided the motions for partial summary judgment—the City served RRVC with a revised expert report. The revised report, among numerous changes, included a new claim for a credit

of $78,957 for "deferred capital investment" under the section 216B.47 "loss of revenue" factor. RRVC responded with a new motion in limine seeking to exclude the portions of the revised report dealing with the new deferred capital investment credit. RRVC argued that (1) the new report did not merely make minor amendments, but systematically transformed the overall damage calculation; (2) the deadline for exchanging expert reports was long past; (3) the new claim would require additional discovery, yet the deadline for discovery had expired; and (4) as the trial had been scheduled to begin months before the City filed the new report, admitting the new credit would allow it to unjustly benefit from the continuance. The district court granted RRVC's motion, excluding the sections of the report dealing with the new deduction as well as any testimony by the City's expert about excluded sections of the report.

A jury trial was held on October 11–13, 2010. The parties stipulated to the amount of damages for three of the four statutory factors: (1) $19,867 for "the original cost of the property less depreciation"; (2) $25,579 for "expenses resulting from integration of facilities"; and (3) $0 for "other appropriate factors." The issue at trial was therefore limited to a dispute over the second factor, "loss of revenue to the utility." *See* Minn.Stat. § 216B.47. During the trial, each side presented expert testimony regarding the appropriate amount of loss-of-revenue damages, though the City's expert was not permitted to testify about a fair-market-value method of valuation. RRVC's expert calculated the damages to be $339,865, while the City's expert valued the damages at $125,000. The jury awarded RRVC the full amount of loss-of-revenue damages it sought, $339,865, which, along with the stipulated amounts, brought the total compensation awarded to RRVC to $385,311.

The court of appeals affirmed the district court's judgment, concluding that "[f]air market value is not the proper measure of damages under Minn.Stat. § 216B.47" and that "the district court did not abuse its discretion when it excluded the untimely [expert report] submitted by the city." *City of Moorhead v. Red River Valley Coop. Power Ass'n,* 811 N.W.2d 151, 161–62 (Minn.App.2012).

We granted the City's petition for review. The City now argues on appeal that (1) the district court and the court of appeals erred in holding that fair market value is not the proper measure of damages under Minn.Stat. § 216B.47; and (2) the district court abused its discretion when it excluded portions of the City's revised expert report dealing with facility replacement costs. Because we conclude that the district court correctly held that the City's calculation of the damages owed under Minn.Stat. § 216B.47 should have incorporated the four statutory factors, and that the court did not abuse its discretion in excluding portions of the untimely revised report submitted by the City, we affirm.

I.

The City first argues that the district court erred as a matter of law when it determined that fair market value was not the proper measure of damages under Minn.Stat. § 216B.47. "In contrast to matters arising during the course of trial, we do not give deference to the district court's conclusions of law and we review questions of law de novo." *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.,* 664 N.W.2d 303, 311 (Minn.2003). The City's argument presents a question of statutory interpretation, which "is a question of law that we review de novo." *Caldas v. Affordable Granite &*

*Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). "The goal of all statutory interpretation is to ascertain and effectuate the intention of the legislature." *Id.* (quoting Minn.Stat. § 645.16 (2012) (internal quotation marks omitted)). "If the language of the statute is clear and free from ambiguity, the court's role is to enforce the language of the statute and not explore the spirit or purpose of the law." *Id.* (citing Minn.Stat. § 645.16).

In an eminent domain dispute, we turn first to the constitutions of the United States and Minnesota. The Fifth Amendment to the United States Constitution regulates takings: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Article I, section 13 of the Minnesota Constitution further states that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." We have said that because the constitutional right to just compensation is to protect property owners, it " 'ought to have a liberal interpretation, so as to effect its general purpose.' " *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 876 (Minn. 2010) (quoting *Adams v. Chicago, Burlington & N. R.R. Co.*, 39 Minn. 286, 290, 39 N.W. 629, 631 (1888)).

■ In explaining the meaning of just compensation, the United States Supreme Court has said that a condemning authority must put a property owner "in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). We have also held that the property owner must receive "a full and exact equivalent for the property taken," and that the equivalent "is usually the market value of the property at the time of the taking contemporaneously paid in money." *Anda*, 789 N.W.2d at 876 (quoting

*Minneapolis–Saint Paul Sanitary Dist. v. Fitzpatrick*, 201 Minn. 442, 449, 277 N.W. 394, 398 (1937)). But, while "condemnation awards are usually based on the fair market value of the property ... the constitutional standard ... is just compensation. Courts can be fluid in the standards they apply to determine just compensation when fairness so requires." *Id.* at 880 (internal quotation marks omitted).

There are two statutory procedures by which a municipality may acquire the rights to an electric service area from a utility: Minn.Stat. § 216B.44 (2012), and Minn.Stat. § 216B.47 (2012). The City chose to proceed under Minn.Stat. § 216B.47, which provides:

Nothing in this chapter may be construed to preclude a municipality from acquiring the property of a public utility by eminent domain proceedings; provided that damages to be paid in eminent domain proceedings must include the original cost of the property less depreciation, loss of revenue to the utility, expenses resulting from integration of facilities, and other appropriate factors.... For purposes of this section, a public utility includes a cooperative electric association.

Under Minn.Stat. § 216B.44(b), the Minnesota Public Utilities Commission (MPUC) determines the appropriate damages when the acquiring municipality and the former service provider are unable to agree. The statutory factors that the MPUC must consider under Minn.Stat. § 216B.44(b), are the same as those in Minn.Stat. § 216B.47, and we have said that the issue of just compensation is "guided in either forum by identical considerations." *City of Rochester v. People's Coop. Power Ass'n, Inc.*, 483 N.W.2d 477, 481 (Minn.1992). The MPUC has developed a formula for applying those statutory requirements to its valuations, and

courts, including the district court here, have applied it in cases arising under Minn.Stat. § 216B.47. We have been clear, however, that courts applying Minn.Stat. § 216B.47 are not bound by the MPUC's formula. *See City of Rochester*, 483 N.W.2d at 480.

The City argues that its traditional fair market valuation approach does not conflict with the statutorily mandated four-factor valuation approach in Minn.Stat. § 216B.47. RRVC argues that the City's use of fair market value analyses is contrary to the plain language of the statute, which states that the "damages to be paid in eminent domain proceedings *must* include the original cost of the property less depreciation, loss of revenue to the utility, expenses resulting from integration of facilities, and other appropriate factors." Minn.Stat. § 216B.47 (emphasis added). It also argues that the statutory factors differ from fair market value, noting particularly that while fair market value calculations generally consider the replacement cost of property, the statute specifies that damages must include the original cost less depreciation. We agree with RRVC. The City's valuation, with its focus on fair market value, failed to give meaningful consideration and value to the four statuto-

ry factors, and thus it was properly excluded by the district court.

This is not to say that fair market value principles can never be used in an eminent domain proceeding under Minn.Stat. § 216B.47. For example, in a situation in which the statutory factors produce a level of compensation below the fair market value of the property taken, the federal and state constitutions would prohibit a court from awarding the owner less than the full market value of his loss. *See, e.g., State ex rel. Ryan v. Dist. Court of Ramsey Cnty.*, 87 Minn. 146, 151, 91 N.W. 300, 302 (1902) (noting that the constitutional limitation on the sovereign's exercise of eminent domain power is "just compensation," the right to which is "absolute, precedent to the constitution itself"). Such principles might also be applied within the four statutory factors, or in other ways, though we need not decide here whether or how such applications would be proper.[2] In this case, it is sufficient to note that the Legislature may require that municipalities pay property owners more than the constitutional minimum, and therefore the City had no authority to ignore the statute and instead pay what it believed to be the minimum constitutional requirement.[3]

---

2. The City stipulated to three of the four factors, including the last factor, and as to that last factor, the City agreed the damages attributable to "other appropriate factors" were zero. It is thus unnecessary for us to consider whether, and under what circumstances, fair market value analysis is includable as another "appropriate factor[ ]." Minn.Stat. § 216B.47.

3. The City and amici supporting the City argue that the Legislature never intended to create an exception to the traditional fair market value approach, and that our decision here will alter the historic standard for determining eminent domain damages without giving the Legislature the opportunity to debate and decide whether such a change is desirable. They also argue, with some justifica-

tion, not only that a decision in favor of RRVC will lead to increased costs for the taxpayers who are the customers of municipal electric utilities, but also that providing compensation that is greater than fair market value offends basic concepts of fairness. While these concerns may have validity, the Legislature enacted Minn.Stat. § 216B.47, and the Legislature is thus the place to pursue, if necessary, a rebalancing of interests between municipal utility customers and rural cooperative customers. Finally, the City cites no evidence that the use of a specialized valuation standard in this unique corner of eminent domain law has eroded the use of the fair market valuation standard in more traditional eminent domain proceedings.

Though we concur with its judgment, we decline to adopt the reasoning of the court of appeals, which found that fair market value was "not compatible with the four enumerated factors." *City of Moorhead*, 811 N.W.2d at 159. The court of appeals reasoned that takings of electric utility areas present unique valuation challenges due to the lack of a liquid market of willing buyers and sellers, and that the doctrine of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—indicated that the Legislature intended the four factors found in Minn.Stat. § 216B.47 to be the exclusive means of calculating compensation awards. *Id.* We do not agree.

By definition, all eminent domain proceedings involve an unwilling seller. And many of the classic examples, including the taking of land for a road expansion—a scenario specifically mentioned by the court of appeals—involve the same issues the court identified as problematic. A highway expansion likely requires the acquisition of the property adjacent to the existing road; there is no other seller to whom the state can turn. And it is a basic tenet of the common law that real property is not treated as a commodity—it is always unique and thus warrants the otherwise unusual award of specific performance. *See, e.g., Willard v. Tayloe*, 75 U.S. 557, 564–65, 8 Wall. 557, 19 L.Ed. 501 (1869) (noting that when a contract for the sale of real property is "plain and certain in its terms, and in its nature and in the circumstances attending its execution appears to be free from objection," it is "the usual practice of courts of equity to enforce its specific execution upon the application of the party who has complied with its stipulations on his part, or has seasonably and in good faith offered, and continues ready to comply with them."). Yet courts can, and routinely do, place a value on such parcels, using all of the information available to reach a specific, case-by-case valuation. We see no reason the same cannot be done for electric utility service areas.

We also note that the language of the statute does not support the application of the *expressio unius* doctrine. Minnesota Statutes § 216B.47 states that damages must *include* the statutory factors, and the fourth consideration listed is "other appropriate factors." This language does not suggest an intent on the part of the Legislature to force courts to limit their consideration of relevant evidence. In fact, the plain language of the statute suggests the opposite: that, as in other eminent domain trials, "evidence [should] be admitted concerning any factor which would affect the price a purchaser willing but not required to buy the property would pay an owner willing but not required to sell it." *State by Humphrey v. Strom*, 493 N.W.2d 554, 559 (Minn.1992).

Though we decline to endorse the reasoning of the court of appeals, we nonetheless conclude that the City's valuation was inconsistent with the plain language of Minn.Stat. § 216B.47 by failing to give meaningful consideration to the four statutory factors, and thus was properly excluded from consideration by the district court.

## II.

 The City next argues that the district court abused its discretion when it excluded portions of the City's revised expert report dealing with facility replacement costs. "Evidentiary rulings, including the admission of expert testimony, are within the broad discretion of the district court." *State v. Peterson*, 764 N.W.2d 816, 821 (Minn.2009). We review evidentiary rulings of the district court, including the admission of expert testimony, for an abuse of discretion. *State v. Anderson*, 789 N.W.2d 227, 234 (Minn.2010).

Entitlement to a new trial on the grounds of improper evidentiary rulings

rests upon the complaining party's ability to demonstrate prejudicial error. In the absence of some indication that the trial court exercised its discretion arbitrarily, capriciously, or contrary to legal usage, the appellate court is bound by the result.

*Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn.1997) (internal quotations marks and citations omitted).

The City argues that it had a duty to supplement its expert report under Minn. R. Civ. P. 26.05, and that the decision to exclude the relevant sections of its report was a severe sanction that was prejudicial and could reasonably have changed the outcome of the trial. But there were sound reasons to exclude the report. It was submitted months after the deadline for completion of discovery and exchange of expert reports, and also after the trial was scheduled to start, thus raising serious trial practice concerns, including additional delays in litigation that had already stretched over four years. And, as RRVC noted at oral argument, the City had taken possession of the service territory months earlier and thus knew, or should have known, about additional costs associated with aging infrastructure well in advance of the actual date of delivery of the amended report. We cannot say, given this record, that the district court abused its discretion in excluding the objected-to portions of the City's revised report.

Because we hold that the district court was correct in concluding that the four statutory factors should have been included in the City's calculation of the damages owed under Minn.Stat. § 216B.47, and that the district court did not abuse its discretion in excluding portions of the City's untimely revised report, we affirm.