*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0016**

City of Duluth,
Respondent,

vs.

120 East Superior Street, Duluth, Minnesota, et al.,
Appellants.

**Filed July 28, 2014
Affirmed
Smith, Judge**

St. Louis County District Court
File No. 69DU-CV-13-1612

Gunnar B. Johnson, Duluth City Attorney, Nathan LaCoursiere, M. Alison Lutterman, Assistant City Attorneys, Duluth, Minnesota (for respondent)

Randall D. B. Tigue, Golden Valley, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Connolly, Judge; and Klaphake, Judge.[*]

# UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's permanent injunctions, under both statutory and common law, against appellants because the district court did not clearly err by finding

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

that, after the requisite abatement period, the prosecuting attorney had cause to believe that a statutory public nuisance existed and because each injunction is supported by unchallenged grounds.

## FACTS

The facts of this case are largely undisputed. Appellant James Robert Carlson is the president and sole shareholder of appellant L.P.O.E., Inc., which operates a retail store located at appellant property 120 East Superior Street in Duluth. This property is commonly known as Last Place on Earth (LPOE). Among its products, LPOE sells an assortment of synthetic drugs, sometimes referred to as "legal alternatives" to controlled substances. In 2011, following the passage of a state law banning the sale or possession of certain synthetic drugs, any previous competition disappeared, and LPOE's synthetic drug business flourished. *See* Minn. Stat. §152.027, subd. 6 (Supp. 2011). The success of LPOE's synthetic drug business resulted in numerous problems throughout the community, including stress on neighboring businesses, law enforcement, hospitals, and social services. As a result of these issues, respondent City of Duluth served LPOE with a notice of public nuisance. After the statutory period, the city filed a public nuisance action and moved for temporary injunctive relief. The district court granted the motion in part, "ordering LPOE to reimburse the public for the cost and maintenance of daily police presence," but declining to "order LPOE to suspend its commercial business or restrict or prohibit the sale of synthetic drugs." *City of Duluth v. 120 East Superior Street, Duluth, Minnesota*, No. A13-0027, 2013 WL 5022523, at *2 (Minn. App. Sept. 16, 2013). LPOE challenged the temporary injunction, and this court affirmed. *Id.* at *1.

2

In March 2013, while the first appeal was pending, law enforcement conducted four controlled buys at LPOE. During each controlled buy, they purchased at least one product that subsequently tested positive for a controlled substance. On March 29, law enforcement executed a search warrant at LPOE and seized products that subsequently tested positive for controlled substances.[1] On May 7, the city served appellants with a notice of public nuisance; the notice cited the March controlled buys and "the false, misleading, and deficient branding, labeling, packaging, and sale of products," in violation of federal and state law, "on a daily and continuing basis." On May 17, law enforcement conducted another controlled buy at LPOE; they again purchased products that tested positive for a controlled substance.[2]

On June 19, the city filed a second public nuisance action against appellants, alleging two distinct types of statutory public nuisance and seeking temporary and permanent injunctive relief. On July 9, the city moved for a temporary injunction, "halting the sale of 'synthetic drug look-alike substances.'" On July 17, appellants answered the complaint and filed a counterclaim. Appellants asserted that they had "abated any nuisance premised upon the alleged sale or possession of controlled

---

[1] In connection with these events, the state charged Carlson with nine counts of fourth-degree controlled substance crime.

[2] In June 2013, the city enacted an ordinance that "requires any person, who engages in the business of operating a synthetic drug establishment, to first obtain a license for such establishment. The ordinance defines 'synthetic drug establishment' as any business establishment where any person engages in the sale of synthetic drugs." *Carlson v. City of Duluth*, 958 F.Supp.2d 1040, 1046 (D. Minn. 2013) (citations omitted). Carlson challenged this ordinance in federal court. *Id.* at 1045. On July 18, 2013, the Chief Judge of the District of Minnesota denied Carlson's motion to enjoin enforcement of the ordinance. *Id.* at 1045-46.

substances" and requested "a declaratory judgment that [the public nuisance statute] is unconstitutional and a temporary and permanent injunction against its continued enforcement." On July 18, law enforcement conducted another controlled buy at LPOE; this time they purchased products that tested positive for a substance that the legislature had slated for classification as a controlled substance but which was not yet illegal.

On July 19, the district court granted a temporary restraining order, halting appellants' business. The city experienced an immediate and drastic decrease in the number of law enforcement calls, emergency room visits, and social services issues related to the use of synthetic drugs. The district court granted the city's motion for a temporary injunction and, following a court trial, issued a permanent injunction against the property under Minn. Stat. § 617.83 (2012), on two distinct grounds, and against Carlson and LPOE under public nuisance common law.

## DECISION

### I.

Appellants challenge the district court's permanent injunction under Minn. Stat. § 617.83 against appellant property.

### A.

Appellants first challenge the district court's rejection of, in the district court's words, appellants' "proposition that a prosecutor may only commence a nuisance action upon proof the nuisance is ongoing *after* the 30 days have passed since [appellants] were served with the notice of nuisance." In response, the city argues that "[c]ontrary to the interpretation advanced by appellants, the Public Nuisance Statute did not give

4

[appellants] unfettered license to sell illegal drugs throughout the 30 days following service of the May 7 notice of public nuisance." This issue presents a question of statutory interpretation, which is a question of law subject to de novo review. *City of Moorhead v. Red River Valley Co-op Ass'n*, 830 N.W.2d 32, 36 (Minn. 2013).

When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). In doing so, we "first determine whether the statute's language, on its face, is ambiguous." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute's language is ambiguous only when it is subject to more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). We construe words and phrases according to their plain and ordinary meanings. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980); *see also* Minn. Stat. § 645.08(1) (2012) (providing that words and phrases are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson*, 683 N.W.2d 818, 821 (Minn. 2004).

Under Minnesota's public-nuisance statute, a prosecuting attorney must provide statutorily prescribed notice to "all owners and interested parties" before seeking abatement of a public nuisance. Minn. Stat. § 617.81, subd. 4(a) (2012). Among other things, the notice must "inform the recipient that failure to abate the conduct constituting the nuisance or to otherwise resolve the matter with the prosecuting attorney within 30 days of service of the notice may result in the filing of a complaint for relief in district

court." *Id.*, subd. 4(b)(3) (2012). If the recipient of such notice "either abates the conduct constituting the nuisance or enters into an agreed abatement plan within 30 days of service of the notice and complies with the agreement within the stipulated time period, the prosecuting attorney may not file a nuisance action on the specified property regarding the nuisance activity described in the notice." Minn. Stat. § 617.82(a) (2012). However, after the 30-day abatement period, the prosecuting attorney may seek injunctive relief if he or she "has cause to believe" that a public nuisance exists. Minn. Stat. § 617.82(c) (2012). Under the statute's plain and unambiguous language, if a property owner undeniably abates the nuisance conduct within 30 days of the notice, the prosecuting attorney may not file a public nuisance action. *See City of West St. Paul v. Krengel*, 768 N.W.2d 352, 357-58 (Minn. 2009). The district court erroneously rejected appellants' proposition.

This does not end our analysis, however. Rather, we next determine whether the district court clearly erred by implicitly finding that the prosecuting attorney had "cause to believe" that a public nuisance existed after the 30-day abatement period. *See Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (an appellate court reviews "the district court's factual findings for clear error").[3]

Appellants assert that because law enforcement did not purchase any illegal substances from LPOE after the 30-day abatement period, "[t]here was not a shred of evidence at trial" that appellants had not abated the noticed conduct. We disagree. Here,

---

[3] We note that in its final order, the district court found that appellants did not "unilaterally abate[] the nuisance after receiving the notice." To the contrary, appellants "failed to show that they took any steps to even attempt to abate the nuisance conditions."

6

the "noticed conduct" included appellants' "daily and continuing sale and possession of illegal, misbranded and deficiently labeled consumer articles." *See* Minn. Stat. § 617.81, subd. 2(a)(iii)-(v) (2012) (listing acts constituting a public nuisance). It is undisputed that, in the months before this action was filed, LPOE unlawfully sold mislabeled controlled substances with negative side effects on numerous occasions. And the record demonstrates that, after receiving the notice, LPOE continued with business as usual. Therefore, although this action was filed before law enforcement conducted a post-abatement-period controlled buy at LPOE, the district court did not clearly err by implicitly finding that when the prosecuting attorney filed this action, the prosecuting attorney had cause to believe that a public nuisance existed at LPOE. Therefore, the district court did not err by reaching the merits of the statutory public-nuisance claim and appellants are not entitled to dismissal of the claim.

**B.**

Appellants next challenge the district court's conclusion that "a nuisance exists . . . under Minn. Stat. § 617.81, subd. 2(a)(2)(iii)." The public-nuisance statute establishes criteria for 10 distinct scenarios, each of which constitutes a public nuisance. *See* Minn. Stat. § 617.81, subd. 2(a) (2012). In relevant part, a public nuisance exists if at least one "unlawful sale, possession, storage, delivery, giving, manufacture, cultivation, or use of controlled substances [is] committed within the building" within the previous 12 months. *Id.*, subd. 2(a)(v). A public nuisance also exists when, on at least two separate occasions within the previous 12 months, the following provision is violated:

Whoever by an act or failure to perform a legal duty intentionally does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor:

(1) maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public; or . . .

(3) is guilty of any other act or omission declared by law to be a public nuisance and for which no sentence is specifically provided.

Minn. Stat. § 609.74 (1),(3) (2012); *see also* Minn. Stat. § 617.81, subd. 2(a)(iii).

Here, the district court concluded that a public nuisance exists at LPOE under *each* of these provisions. Because the city is entitled to a permanent injunction upon proof of *one* public nuisance, *see* Minn. Stat. § 617.83 (upon proof of a public nuisance, the district "court shall issue a permanent injunction"), and because the undisputed facts establish a public nuisance under Minn. Stat. § 617.81, subd. 2(a)(v), we decline to address appellants' argument. Regardless of whether a public nuisance exists under the challenged provision, the district court did not err by permanently enjoining the sale of synthetic drugs at 120 East Superior Street, Duluth, Minnesota, under Minn. Stat. § 617.83.

**II.**

Appellants also challenge the district court's permanent injunction, under common law, against Carlson and L.P.O.E., Inc. Appellants argue that the city's synthetic-drug ordinance, as applied, is unconstitutional because application for a license would itself be incriminating under the Fifth Amendment to the United States Constitution. "The constitutionality of an ordinance is a question of law, which this court reviews de novo."

8

*State v. Botsford*, 630 N.W.2d 11, 15 (Minn. App. 2001), *review denied* (Minn. Sept. 11, 2001). However, appellate courts "do not decide constitutional questions except when necessary to do so in order to dispose of the case at bar." *State v. Hoyt*, 304 N.W.2d 884, 888 (Minn. 1981). Although the district court included appellants' "open violation" of the city's synthetic-drug ordinance among its reasons for granting the permanent injunction, the district court specifically stated that it "would find a common law public nuisance exists regardless of [appellants'] refusal or failure to comply with" the ordinance. Appellants do not challenge this conclusion. Because the permanent injunction under common law would remain regardless of appellants' constitutional claim, we do not decide this argument.[4]

**Affirmed.**

---

[4] After Carlson was indicted and found guilty of more than 50 charges in federal court, and his motions for a judgment of acquittal and for a new trial were denied, a special term panel of this court dismissed appellants' additional arguments as not justiciable. *See U.S. v. Carlson*, No. 12-305, 2013 WL 6480744 (D. Minn. Dec. 10, 2013). Therefore, we conclude our analysis here.